WADSWORTH *v.* THE TOWN OF HENNIKER.

There is no promise implied in law against a town to refund to their selectmen the amount of the damages recovered by a citizen of the town against the selectmen, on account of a distress of his property under their warrant to the collector of taxes, for the non-payment of a tax assessed by them, which was adjudged illegal because it was assessed for money voted by the town to be raised for a purpose for which they had no authority to raise money by tax.

Money thus paid as damages by the selectmen cannot be recovered as money paid for the town; nor, upon the payment of such damages, can the money in the town treasury, arising from the illegal tax, be recovered by the selectmen to the extent of the damages paid, as money had and received by the town to their use.

ASSUMPSIT, for money paid, laid out and expended, for money had and received, and for interest on money due.

Plea, the general issue.

The plaintiff was one of the selectmen of the town of Henniker, for the year 1846, and acted as such in the assessment of the taxes for that year, in conjunction with Parrott Marsh and Jeremiah Foster, the other selectmen. The votes passed by the town at the annual meeting in that year, and the previous votes, and proceedings relative to the subject matter of the suit, are stated in the report of the case, *Rice v. Wadsworth,* 7 Foster 104, and make a part of this case. Many of the tax-payers resisted the payment of these taxes under the assessment of that year, and distresses were made by the collector for that year, in the early part of 1849, upon the persons and property of the delinquent tax-payers, and the taxes were collected by or paid over to the collector, and by him paid into the town treasury. The warrant to the collector was signed by the plaintiff and Marsh, the other selectman, Foster, declining to sign it. Actions were brought by several of the tax-payers against the plaintiff for the illegal assessment of the taxes — the other selectman who signed the warrant having deceased. One of these actions, *Rice v. Wadsworth,* was carried to the Superior Court upon the question of law, whether the taxes were illegal; and, upon judgment being pronounced in that case that the tax was illegal, the now

plaintiff, being the defendant in that action, paid the amount of the judgment and settled the other actions, and he claims to recover in this suit the amount so paid by him on account of those actions.

The plaintiff offered to prove that after the annual meeting in March, 1846, and before proceeding to assess the taxes, the selectmen consulted several eminent counsellors-at-law, and obtained their opinions in writing, to the effect that the taxes could be enforced against the tax-payers, but that the selectmen could be restrained from distributing the amount of the interest on the surplus revenue deposited with the town among the tax-paying polls, under the vote of 1846. He also offered in evidence the following article in the warrant for a special meeting of the town on the 30th of November, 1846, and the votes of the town under said article.

"*Art.* 3. To see what action the town will take in relation to the course pursued by the majority of the selectmen, under the vote of the town at the annual meeting in March last, touching the interest accruing upon the surplus revenue, and in relation to the bill in equity filed by Moses Brown and others against the selectmen · and the collector, and the temporary injunction served upon them on the 13th of November, 1846."

Under Art. 3, — "*Voted,* that the town approve the course pursued by Parrott Marsh and Titus V. Wadsworth, as selectmen, under the vote of the town mentioned in said article."

"*Voted,* that when the town voted at the last annual meeting to divide the interest on the surplus revenue, whether in the hands of the town or loaned to individuals, it was intended the interest on the whole sum originally deposited with the town."

"*Voted,* that the town has ever considered and treated the whole of the surplus revenue deposited as a fund, subject to the control of the town, and prefer so to consider and treat it now."

"*Voted,* that the town has never intended to use up any of the principal of said fund, but simply to appropriate the interest on the same ; and whenever any portion of the principal has been received by the selectmen from the agent or treasurer, for any

purpose whatever, it has been taken with the express intention and expectation that the town was to pay the interest annually on the sum so taken, the same as an individual, and that the sums so taken were liable to be paid back again to the agent or treasurer when the town should so vote."

" *Voted,* that the town has never approved the settlement of the town accounts in any year since the surplus revenue was deposited, but with the understanding that the whole of the principal of said fund has been kept good, and remained subject to the control of the town."

" And whereas certain penurious and litigious persons, Moses Brown and others, have instituted a bill in chancery against said Marsh and Wadsworth, and Zadock Dustin, Jr., collector of taxes, for the purpose of preventing them from proceeding farther, according to the vote of the town at the last annual meeting, touching the interest on the surplus revenue deposited with the town; and whereas the town of Henniker, as a town, are interested in the decision of the question presented by said bill, therefore — *Voted,* that said Marsh and Wadsworth be instructed to spare no pains in endeavoring, by presentation of the facts that may be pertinent, by the employment of able counsel, and by all other proper means, to procure a just and equitable decision of the case."

The plaintiff also offered votes of the town in 1847, " to suspend the vote of last year respecting the interest arising from the surplus revenue for one year ;" and " to pay the interest on the arrearages of interest arising from the school and literary fund, and to appropriate two hundred dollars of the above interest, in addition to what is required by law to be appropriated for schooling."

The court being of opinion that upon the facts presented the plaintiff was not entitled to recover, a verdict was taken, by consent, for the defendant, upon which judgment is to be rendered, or the same is to be set aside and a new trial granted, according to the opinion of the Supreme Court.

*George & Foster,* for the plaintiff.

*Flint & Bryant,* for the defendant.

SAWYER, J.* The facts stated in the report of the case, Rice *v.* the now Plaintiff, 7 Foster 104, are made a part of the present case. From those facts it appears that prior to 1837 the town of Henniker held a fund arising from the sale of lands set apart by the original proprietors for the support of the gospel and of public schools, which was known as the "ministerial fund." This fund consisted in notes payable to the town, and bearing interest, and the accruing interest was annually appropriated, by dividing it among the several religious societies within the town. In 1837 the notes constituting this fund were collected, and, in pursuance of the vote of the town, the money was wholly applied to the purchase of a poor-farm for the town ; the vote under which this application was made containing a proviso that the money should be refunded back to the town whenever the town should so vote. In 1839 the town voted that the interest upon the ministerial fund, viewing it as a fund still in existence, be paid over to the various religious denominations, as it had been previous to 1837. Although in fact no such fund then existed, a sum equal to the interest upon the original fund was thus annually paid to the various religious societies down to 1842, when the town again voted that the ministerial interest money be appropriated as it had been, and that it should continue thus to be paid until otherwise ordered by the town.

In pursuance of these votes the interest upon this ideal fund was distributed each year down to and including 1846 ; the amount distributed in 1846 being $86.53. The action, Rice *v.* the now Plaintiff, was brought to recover damages for the distress of the then plaintiff's property, under a warrant for the collection of the tax of 1846 ; and in that case it was held, that although, by the vote of 1846, the sum of $2300 was raised for the necessary charges and expenses of the town, the tax assessed for raising that sum was illegal, because it was to be understood

* PERLEY, C. J., and BELL and FOWLER, J. J., did not sit.

that it was assessed to the extent of the $86.53 for the purpose of raising so much money to be distributed, agreeably to the votes of 1839 and 1842, among the religious societies of the town, and for such a purpose the town had no authority to raise money by tax. Upon the view that the money was raised for that specific purpose, the soundness of the decision is not to be questioned; but it is difficult to perceive upon what just ground it could be held, that the money in this instance was raised for that purpose. It was raised by a vote in express terms, to defray the necessary charges and expenses of the town; and although by the vote of a former year the town had declared that the distribution of this ideal interest money should constitute an annual charge upon their funds, it was the duty of the selectmen to apply the money raised under the vote to defray town charges to those expenses which were warranted by law. In their disbursement of the town's money they might well be held to disregard the direction given to the funds by the votes of 1839 and 1842 as illégal, and to consider the declared purpose in raising the $2300 to be, to defray those charges and expenses to which the town might legally be subjected. It is unnecessary, however, in this case, to reëxamine the grounds of the decision in that. The money sought to be recovered in this suit may be considered as money which the plaintiff was compelled to pay by reason of the judgment of the court in that case, pronouncing the assessment of the tax illegal, because it was to raise money voted by the town to be raised for an illegal purpose. This presents the questions arising in this case upon the most favorable ground for the plaintiff.

It is well settled that towns may indemnify their officers against liability arising from their official acts. This was expressly decided in *Pike* v. *Middleton*, 12 N. H. 278, and is fully sustained by the reasoning of the court and the authorities cited. If there is evidence in this case tending to show that the town agreed thus to indemnify the plaintiff, it should have been submitted to the jury for them to pass upon; as the money paid by the plaintiff on account of the illegal assessment may be recov-

ered in this suit as so much money paid, laid out and expended for the town, if an agreement existed that the town should indemnify him against liability on account of the assessment. Upon such agreement it may be considered as money paid for the town.

It is clear that no such agreement is implied or to be inferred from the fact that the town voted to raise the money, or voted to raise it for an illegal purpose. This view might perhaps be entertained if the relation of principal and agent subsisted between the town and its selectmen in the matter of raising money by tax; and the votes of the town in raising it could justly be regarded as the orders and directions of the principal to the agents; the selectmen to make the assessment. Though the selectmen in some respects and for some purposes are properly deemed the agents of the town, it is very clear they are not so in reference to the assessment of the public taxes. They can no more be said to be the agents of the town in making the assessment, because they assess money for the use of the town or under a vote of the town, than that they are agents of the State or county, because in the assessment are included the State and county taxes. In this they are not acting as the agents of any principal, but as public officers, in the discharge of an official duty. In performing that duty they are bound to conform their action to the requirements of the law, and to confine it within the limits prescribed by law, irrespective of any instructions or directions they may receive from the town. They can proceed to assess a tax when the conditions exist which the law prescribes as the ground for their proceeding, namely, in the case of money raised by vote of the town; a legal vote to raise the money, and a purpose declared for which the money is raised, such that the town has the right to raise money by tax for that object. Beyond this their proceedings in that behalf are a nullity. But whether their doings are legal or illegal, they act in virtue of their office and in the discharge of a public official duty, and not by reason of any duty or obligation to the town, growing out of the relation of agent and principal between them and the town,

upon which an implied promise can arise to indemnify them against liability on account of their official acts.    To hold that a promise is implied, from the vote of the town to raise money, that the selectmen shall be indemnified for making the assessment, would overthrow the well settled and salutary doctrine that towns are authorized to raise money only for the purposes defined by law ; for it would enable them to do that by indirection in the way of raising money to indemnify their selectmen for the illegal tax, which upon that doctrine they are forbidden to do directly.

The question then recurs, is there any evidence in this case of an express promise to indemnify ?    It is clear that no promise or agreement to this effect is proved by the votes of the town passed prior to the annual meeting in 1846.    Those votes merely relate to the disposition of the different funds — the ministerial, the literary and surplus revenue — and the application of the interest arising from them, and in no view do they import any agreement of the town with the selectmen.

At the meeting of the town on the 30th of November, 1846 — subsequent to the assessment of the tax in question—several votes were passed on the subject of the proceedings of the selectmen in relation to the interest upon the surplus revenue, and on the subject of the bill in equity filed by certain tax-payers to restrain the selectmen from paying over to the poll tax-payers the amount of that interest.    These all relate to the surplus revenue, and, with the exception of the last, are merely declaratory of the views of the town on the subject of the existence of the fund, as one still remaining in the hands of the town, and explanatory of their previous votes in directing the appropriation of the interest money upon it.    It cannot be understood or inferred from any of these votes, unless it be the last, that the town, by their action in passing them, entered into an agreement of any kind with the selectmen.    The last of these votes recites in its preamble that certain persons have instituted a bill in chancery against the collector of taxes and two of the selectmen, of whom the now plaintiff was one, for the purpose of preventing their proceeding under the vote of the town at the annual meeting in

Wadsworth *v.* Henniker.

March, 1846, to divide the interest on the surplus revenue ; that the town have an interest in the question presented by the bill, and therefore the town vote that the two selectmen, then defendants, be instructed to spare no pains in endeavoring to procure a just and equitable decision of the case.

It may be conceded that the proceeding of the town in adopting this vote is evidence upon which a jury might find that the town agreed to indemnify the defendants in the bill for the after expenses incurred by them in litigating that case ; but it is no evidence of any agreement beyond that.   It is clear that it does not tend to show that the town agreed to indemnify the plaintiff against his liability in the suits at law commenced in 1849, three years subsequently, which liability arose, not on account of the questions in relation to the surplus revenue, alone involved in the bill in chancery, but on account of the illegality of the assessment in 1846, arising from the unlawful purpose for which, in connection with the distribution of the ministerial fund, the assessment was made.   Even if the suits at law depended upon the same questions relative to the interest of the surplus revenue as were involved in the chancery suit, still an express vote of the town to indemnify this plaintiff against the expenses of defending the chancery suit, would be no evidence of an agreement to indemnify him against his liability in the subsequent suits at law.

The vote of the town in 1847 to suspend for one year the operation of the vote of 1846, respecting the interest arising from the surplus revenue, and to pay interest on the interest in arrear arising from the school and literary fund, it is very clear furnish no evidence of such agreement.   There is nothing, then, in any of the proceedings of the town competent to be submitted to a jury as evidence upon which they might find that the town agreed to indemnify the plaintiff against the liability incurred by him in the assessment of the tax.   In the absence of any such agreement, the money paid in settlement of the suits at law cannot be considered as paid for the town.   It was paid by the plaintiff to discharge a liability incurred by him in the exercise of his office as selectman, in assessing a tax which the law did not

Wadsworth *v.* Henniker.

authorize him to assess.   The illegality of the proceeding on account of which he was subjected to the liability was not the unauthorized vote of the town, but his unauthorized proceeding in assessing a tax which he had no power to assess.   It is true, he was lead to the error by the illegal action of the town in voting .to raise the money for which the tax was assessed.   But neither the fact that the town passed the unauthorized vote, nor that the assessment enured to the benefit of the town, renders the assessment any the less the illegal proceeding of the plaintiff, or the payment of the money on account of it any the less a payment made for himself instead of the town.   He was bound to know in what cases and in what manner the law required him to execute his official duties ; and for any violation of the law in that respect, however unintentional on his part, he is liable to the party suffering injury therefrom.   The case, thus considered, is in no way modified by the fact that the plaintiff acted under the advice of eminent counsel.   The question here is, Was the money paid for the town ? and it is immaterial to that question that the plaintiff was advised that the assessment would be legal. The money when paid was paid for himself and not for the town ; whether paid because of an intentional violation of the law, or of an innocent mistake, into which he may have fallen under the advice of the ablest counsel.

There is, then, no ground on which the plaintiff can recover in this case as for money paid.   Can he recover on the ground that the defendant has received money to his use ?   By means of the illegal assessment the town has received the amount of the taxes assessed.   This was paid, first, to the collector of taxes, in discharge and satisfaction of the taxes, and subsequently through him to the town.   But this cannot be regarded as money paid to the plaintiff's use.   If the money can be regarded as held by the town to the use of any person because it was received on account of taxes which were illegal, it must be the tax-payers and not the selectmen who merely assessed the tax.

The subsequent proceedings resulting in the payment of damages by the selectmen to the tax-payers for the illegal assessment,

cannot affect the title of the town to the money. The town is not privy to the suit between the tax-payer and selectmen, or to the judgment rendered therein. If down to the time of the judgment the money was not that of the selectmen, or held by them to their use, it does not become so by reason of the judgment or by satisfaction of it. To give it this effect would be to conclude the town upon the question of their right to hold the money in their treasury arising from the taxation by a judgment *inter alios*, thus making the title of the town to the money in their treasury to depend upon the result of suits to which they are not party, and which they can have no opportunity to defend.

Besides, it is the policy of the law to secure all the guaranties for the fidelity and vigilance of the selectmen in the discharge of their duties as public officers, in assessing the tax, and as agents of the town in defending suits in which the town may have an interest, which are to be derived from holding them to a personal responsibility for their illegal proceedings.

It may also be suggested that even if there were proper grounds in this case for regarding the money as held by the town for the use of the plaintiff, no action can be maintained for its recovery until it has been demanded, and the case does not find a demand made before the commencement of the action.

*Judgment on the verdict.*